# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ESTATE OF EDWARD L. HIMMELWRIGHT, Deceased, | No. 4:21-CV-01731 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| BOBBIE JO BRUNGARD, LYCOMING-CLINTON MENTAL HEALTH-INTELLECTUAL DISABILITY PROGRAM, DR. JAMES SWEETLAND, UPMC LOCK HAVEN, TROOPER BENJAMIN J. CAMPANA, and THE PENNSYLVANIA STATE POLICE | |
| Defendants. | |

## MEMORANDUM OPINION

### APRIL 29, 2022

In September 2021, the Estate of Edward Himmelwright[1] sued Bobbie Jo

Brungard, Lycoming-Clinton Mental Health-Intellectual Disability Program, Dr.

James Sweetland, UPMC Lock Haven, Corporal Benjamin Campana, and the

Pennsylvania State Police. The Estate alleges that these Defendants violated

---

[1] An Estate is not a legal entity capable of suing or being sued. Fed. R. Civ. Pro. 17; *Brennan v. Smith's Estate*, 301 F. Supp. 307, 308 (M.D. Pa. 1969) (Sheridan, J.); *In re Harrisburg Trust Co.*, 80 Pa. Super. 585, 586–87 (Pa. Super. Ct. 1923). Though the Defendants have raised no objection, the case should instead be brought by Anna M. Douty, who is identified as the Executrix of Himmelwright's estate in the Complaint. *See* Doc. 1-3 ¶ 2; Fed. R. Civ. Pro. 17(a)(1)(A) ("An action must be prosecuted in the name of the real party in interest. The following may sue in their own names without joining the person whose benefit the action is brought: (A) an executor").

Himmelwright's state and federal rights in responding to a mental health episode he suffered just over a year before his death. Each Defendant has now moved to dismiss these claims under Federal Rule of Procedure 12(b)(6). For the reasons detailed below, their motions are granted.

## I.    FACTS ALLEGED IN THE COMPLAINT

On July 10, 2019, Himmelwright experienced a mental health episode.[2] After he was taken into custody, Bobbie Jo Brungard, an employee of the Lycoming-Clinton Mental Health-Intellectual Disability Program ("Lycoming-Clinton MHID"), initiated an involuntary mental health commitment under Pennsylvania's Mental Health Procedures Act.[3] But according to the Estate, the Act's procedures were not employed when Himmelwright arrived at UPMC Lock Haven that afternoon.

The Estate first alleges that his hospital records only reflect that his rights were explained to him, with no mention of the forms having been provided to him.[4] Second, the Estate contends that he was not seen within two hours, alleging that while he arrived at 2:06 PM, according to Hospital Records, his 302-Commitment Form suggests that he was not seen until 7:15 PM—some five hours later.[5] And third, the Estate states that while UPMC Lock Haven Doctor James Sweetland found him

---

[2]    Doc. 1-3 ¶ 9.
[3]    *Id.* ¶ 10.
[4]    *Id.* ¶ 13.
[5]    *Id.* ¶¶ 16–17.

"severely mentally disabled and in need of treatment" and directed that he "be admitted to a facility designated by the County Administrator for a period of treatment not to exceed 120 hours," Himmelwright was never committed.[6] Instead, he was transferred to Penn State Hershey Medical Center later that evening for further treatment.[7]

In the Estate's view, this last violation resulted in another deprivation of Himmelwright's rights. Despite never having been committed, the Estate alleges that Lycoming-Clinton MHID and Brungard informed the Pennsylvania State Police that he had been.[8] Based on this incorrect information, Corporal Benjamin Campana and the Pennsylvania State Police obtained a warrant for Himmelwright's residence and seized his firearms, damaging his property in the process.[9]

## II.    THE LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint, in whole or in part, if the plaintiff has failed to "state a claim upon which relief can be granted." Following the landmark decisions *Bell Atl. Corp. v. Twombly*[10] and *Ashcroft v. Iqbal*,[11] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

---

[6]    *Id.* ¶¶ 18–19.
[7]    *Id.* ¶ 19.
[8]    *Id.* ¶¶ 19, 22.
[9]    *Id.* ¶ 23.
[10]   550 U.S. 544 (2007).
[11]   556 U.S. 662 (2009).

is plausible on its face.'"[12] In its assessment, the Court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]."[13] Still, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[14] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[15] And of particular importance here, while "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleading. . . . an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."[16]

## III.   ANALYSIS

### A.   The Claims Against UPMC Lock Haven and Dr. Sweetland

As a result of Himmelwright's alleged wait once he arrived at the Hospital, the Estate claims that UPMC Lock Haven and Dr. Sweetland committed the tort of false restraint or false imprisonment, which it in turn alleges is a constitutional

---

[12]   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[13]   *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[14]   *Iqbal*, 556 U.S. at 678; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.) ("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss.").

[15]   *Iqbal*, 556 U.S. at 678.

[16]   *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

violation entitling it to damages under 42 U.S.C. § 1983.[17] But neither count may proceed.

To start, there are the claims' legal failings. The first count, false imprisonment, requires physical confinement or in its absence, an attempt by the person to determine whether they are actually confined.[18] Yet nothing in the Estate's claim can plausibly be read as alleging that UPMC Lock Haven, its employees, or Sweetland restrained or prevented Himmelwright from leaving. At the same time, section 1983 only applies to state actors.[19] And UPMC Lock Haven, which employs Sweetland, is a private, nonprofit corporation. So neither the Hospital or its Doctor can sustain the second count.

Now, these failings alone would justify dismissal. But even if they did not, a broader flaw in the Estate's case would prove its undoing. The Estate rests its claims on the hospital's alleged failure to examine Himmelwright within two hours of his arrival, as required by 50 P.S. § 7302(b). According to the Estate, "[p]er medical records," Himmelwright arrived at 2:06 PM and was not treated until at least 7:15 PM.[20] The invocation of "per medical records" means that this Court may properly

---

[17]   Doc. 1-3 ¶¶ 27–31, 46–52.

[18]   *Chicarelli v. Plymouth Garden Apartments*, 551 F. Supp. 532, 540–41 (E.D. Pa. 1982).

[19]   *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) ("Section 1983 subjects to liability those who deprive persons of federal constitutional or statutory right 'under color of any statute, ordinance, regulation, custom, or usage' of a state. . . . We consider actions 'under color of law' as the equivalent of 'state action' under the Fourteenth Amendment. . . . Thus, to state a claim of liability under § 1983, [Plaintiffs] must allege that [they were] deprived of a federal constitutional or statutory right by a state actor.").

[20]   *Id.* ¶¶ 16–18.

consider his emergency record on a 12(b)(6) motion.[21] And this record shows that he was treated within two hours of his arrival.[22]

The sole basis for the Estate's case is its own interpretation of a doctor's handwriting. In the 302 petition, Sweetland lists 3:01 PM as Himmelwright's arrival, while the exact time of examination is listed in military time. The Estate contends that this handwritten time is ambiguous, and the only time that could make sense would be 1915, or 7:15 PM, some five hours after his arrival.[23] But this assertion is belied by the numeral's dissimilarity to the other "9" on the page and, most importantly, the electronically recorded log of Himmelwright's visit. The report lists his arrival at 14:06,[24] his triage at 2:07 PM,[25] his physical assessment by nurses at 14:48,[26] and his visits with Sweetland at 15:13—aligning with a "1515" time of examination—and once again at 15:35.[27]

In short, these counts fail on the law and the facts. They are therefore dismissed with prejudice.

---

[21]  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.
[22]  Doc. 18-4 at 13.
[23]  *Id.* at 34.
[24]  *Id.* at 6.
[25]  *Id.* at 7.
[26]  *Id.* at 8.
[27]  *Id.* at 13–14.

**B.     The Claims Against Bobbie Jo Brungard and Lycoming-Clinton Mental Health-Intellectual Disability Program**

The Estate also alleges that it's entitled to money damages under section 1983 because Brungard and Lycoming-Clinton MHID violated Himmelwright's constitutional and statutory rights. This claim focusses on two separate violations.

First, the Estate emphasizes that the Pennsylvania Mental Health Procedures Act requires that individuals subject to involuntary examination be given copies of certain forms and informed of their right to counsel. But according to the Estate, the hospital records and 302 petition do not show that Brungard provided these forms to Himmelwright. Instead, they note just that Brungard "explained" these rights to him, thus violating the law.[28] Second, the Estate contends that by incorrectly informing the Pennsylvania State Police that Himmelwright had been committed to a mental health facility, resulting in his firearms being seized, Brungard violated Himmelwright's right to be free from unlawful searches and seizures under the Fourteenth Amendment.[29] Finally, the Estate alleges that these violations are evidence of Lycoming-Clinton MHID's failure to properly supervise and train Brungard, which renders the Facility liable under *Monell*.[30] The problem for the Estate, however, is that none provide the basis for a section 1983 claim.

---

[28]   Doc. 1-3 ¶¶ 13, 33(a).

[29]   *Id.* ¶ 33(b).

[30]   *Id.* ¶¶ 35, 36, 38; *see Monell v. Dept. of Soc. Servs*, 436 U.S. 658 (1978).

The first, centered on a violation of the Mental Health Procedures Act, fails because section 1983 "does not provide a cause of action for violations of state statutes."[31]

The second, though based on a federal constitutional right, does little better. While this matter is complicated by the fact that Brungard neither applied for the warrant nor seized Himmelwright's guns, "[a]s a general rule, a government official's liability for causing an arrest is the same as for carrying it out."[32] And under *Franks v. Delaware*, a government official may violate the Fourth—and thus the Fourteenth—Amendment by providing a false statement in a warrant application intentionally or with reckless disregard for the truth.[33]

Provided this approach applies here, the Estate's Complaint fails to allege facts showing that Brungard's decision to relay the message to the State Police amounted to more than a mistake. As it stands, the 302 petition shows that Sweetland found Himmelwright "severely mentally disabled and in need of treatment," and therefore directed that he "be admitted to a facility designated by the County Administrator for a period of treatment not to exceed 120 hours."[34] But later, after speaking with Himmelwright's cardiologist at Penn State Hershey Medical Center,

---

[31]    *Brown v. Grabowski*, 922 F.2d 1097, 1113 (3d Cir. 1990) (citing *Maine v. Thiboutot*, 448 U.S. 1 (1980)).

[32]    *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 272 (3d Cir. 2000) (citing *Gordon v. Degelmann*, 29 F.3d 295, 298 (7th Cir. 1994) and *Kilbourn v. Thompson*, 103 U.S 168, 200 (1880)).

[33]    *Franks v. Delaware*, 438 U.S. 154, 171 (1978).

[34]    Doc. 1-3 ¶ 18.

Sweetland arranged for his care there instead, meaning Himmelwright was not committed, despite Sweetland's initial finding.[35] For Brungard to be held liable, the Estate must allege facts showing that Brungard's incorrect report to the police was made intentionally or with reckless disregard for the truth. It has not done so here.

Without an underlying constitutional violation against Brungard, the Estate cannot sustain a claim against Lycoming-Clinton MHID for failing to train and supervise her.[36]

As a result, Brungard and Lycoming-Clinton MHID's motion to dismiss is granted. The Estate, however, is granted leave to amend these counts.

## C.   The Claims Against the Pennsylvania State Police and Corporal Campana

The Estate finally alleges that, in obtaining a warrant and seizing his firearms, Corporal Campana and the Pennsylvania State Police committed trespass to chattel, which violated his state and federal rights and therefore entitles it to recovery under section 1983.[37]

To begin with, the Estate's counts against the Pennsylvania State Police are barred by the Eleventh Amendment.[38] So its motion to dismiss is therefore granted with prejudice.

---

[35] Doc. 18-4 at 15.
[36] *Monell*, 436 U.S. at 692 (noting that the Act "imposes liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights").
[37] Doc. 1-3 ¶¶ 24–26, 39–45.
[38] *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981); 42 Pa. C.S. § 2310.

A like, but not identical, fate is accorded to the Estate's counts against Corporal Campana. The Commonwealth has not consented to suits in federal court alleging that its officials have, in the course of their employment, committed trespass to chattel.[39] At the same time, state law violations cannot underpin section 1983 claims, and the violations of federally protected rights are not alleged clearly enough to sustain the claim. Indeed, unlike its count against Brungard and Lycoming Clinton MHID, the Estate's count against Corporal Campana and the Pennsylvania State Police makes no mention of an "unlawful search and seizure."[40] Corporal Campana's motion to dismiss both counts is accordingly granted.

The Estate, however, is granted leave to amend these counts. To proceed with the first, the Estate must allege facts showing that Corporal Campana violated Himmelwright's rights under the Fourteenth Amendment, entitling it to monetary damages under section 1983. While to proceed with the second, it must allege facts showing that Campana was acting outside the scope of his employment and committed trespass to chattel. Whether these claims, in amended form, are afflicted with legal infirmities is a question for another day.

---

[39]   1 Pa. C.S. § 2310 (providing Commwealth officials immunity from suit); 42 Pa. C.S. § 8522(b) (delineating the nine categories of claims that the Commonwealth has waived immunity to). In its response brief, the Estate newly asserts that Campana was acting outside the scope of his employment. But a response brief is no place to amend a complaint.

[40]   *Compare* Doc. 1-3 ¶ 33 *with id.* ¶ 40. In its response brief, the Estate newly asserts that Corporal Campana's conduct violated the Fourteenth Amendment, as it was an unlawful search and seizure. But I'll repeat: a response brief is no place to amend a complaint.

## IV.    CONCLUSION

In sum, the Defendants' motions to dismiss are granted. But only the counts against UPMC Lock Haven, Dr. Sweetland, and the Pennsylvania State Police are dismissed with prejudice. The Estate shall have leave to amend its counts against Bobbie Jo Brungard, Lycoming-Clinton MHID, and Corporal Campana.

An appropriate Order follows.


BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge