## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ESTATE OF EDWARD L. HIMMELWRIGHT, Deceased, | No. 4:21-CV-01731 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| BOBBIE JO BRUNGARD, LYCOMING-CLINTON MENTAL HEALTH-INTELLECTUAL DISABILITY PROGRAM, and TROOPER BENJAMIN J. CAMPANA, | |
| Defendants. | |

## MEMORANDUM OPINION

### DECEMBER 28, 2022

For the second time this year, the Court considers whether the Estate of Edward L. Himmelwright has adequately stated claims against Bobbie-Jo Brungard, a publicly employed mental health official, and her employer based on a referral she made to the Pennsylvania State Police. Specifically, Brungard notified the State Police that Himmelwright had been involuntarily committed to a mental health facility, which resulted in a search of Himmelwright's residence and the seizure of his firearms. But there was a problem with this referral: Himmelwright was never involuntarily committed.

The Estate seeks to hold Brungard and her employer liable based on the allegedly unconstitutional seizure of Himmelwright's firearms. The Court previously dismissed these claims without prejudice because, among other things, the pleadings failed to establish that Brungard's incorrect referral amounted to anything more than a mistake. The Estate amended its Complaint, but the Amended Complaint does not remedy the identified deficiencies. Further, as a public employee acting within the scope of her employment, Brungard is qualitatively immune from liability in this suit. As such, the Estate's claims against Brungard and her employer are again dismissed—this time with prejudice.

## I.   BACKGROUND

### A.   Original Complaint

The Estate initiated this lawsuit on September 22, 2021, in the Court of Common Pleas of Clinton County, Pennsylvania.[1] Shortly thereafter, the Defendants removed the action to federal court.[2]

In its original Complaint, the Estate alleged that Himmelwright experienced a mental health episode on July 10, 2019.[3] Relevant here, Bobbie-Jo Brungard, an employee of the Lycoming-Clinton Mental Health-Intellectual Disability Program ("Lycoming-Clinton MHID" or the "Program"), initiated an involuntary mental

---

[1]   Doc. 1-3 (Compl.).
[2]   Doc. 1 (Notice of Removal).
[3]   Doc. 1-3 (Comp.) ¶ 9.

health commitment under Pennsylvania's Mental Health Procedure Act.[4] But according to the Estate, although Brungard told Himmelwright of his rights, neither Brungard nor any other Lycoming-Clinton MHID employee provided Himmelwright with copies of the documentation required by the Act.[5]

Himmelwright was then taken into custody and transported to the UPMC Lock Haven hospital, where he was examined by Dr. James Sweetland.[6] The Estate alleged that although Dr. Sweetland found Himmelwright "severely mentally disabled and in need of treatment" and directed that he "be admitted to a facility designated by the County Administrator for a period of treatment not to exceed 120 hours," Himmelwright was never committed.[7] Instead, he was transferred to Penn State Hershey Medical Center later that evening for further treatment.[8]

Even though Himmelwright was not involuntarily committed, Brungard (or someone else at Clinton-Lycoming MHID) contacted the Pennsylvania State Police.[9] Acting on this referral, State Trooper Benjamin J. Campana obtained a warrant to search Himmelwright's residence and then seized Himmelwright's firearms found inside.[10]

---

[4]   *Id.* ¶ 10.
[5]   *Id.* ¶¶ 11–13.
[6]   *Id.* ¶ 14.
[7]   *Id.* ¶¶ 18–19.
[8]   *Id.* ¶ 19.
[9]   *Id.* ¶ 22.
[10]  *Id.* ¶ 23.

Based on these facts, the Estate brought claims against Brungard and Lycoming-Clinton MHID under 42 U.S.C. § 1983.[11] Specifically, the Estate alleged that Brungard (a) "unlawfully and maliciously failed to advise [Himmelwright] of his rights under the Mental Health Procedures Act"; (b) "incorrectly informed the Pennsylvania State Police that [Himmelwright] had been committed to a mental health facility, thereby resulting in an unlawful search for and seizure of [Himmelwright's] firearms"; and (c) "conspir[ed] to violate the rights, privileges, and immunities guaranteed to [the Estate] by the Constitution and laws of the United States and the laws of the Commonwealth of Pennsylvania."[12] And the Estate asserted that Lycoming-Clinton MHID "failed to ensure that Defendant Brungard was properly supervised or trained."[13] Separately, the Estate brought claims against Officer Campana and the State Police related to the search and seizure,[14] and against Dr. Sweetland and UPMC Lock Haven for its examination and detention of Himmelwright.[15]

The Defendants filed motions to dismiss in October 2021.[16] This Court granted those motions on April 29, 2022.[17] The counts against UPMC Lock Haven,

---

[11]  *Id*. ¶¶ 32–38.
[12]  *Id*. ¶ 33.
[13]  *Id*. ¶ 36.
[14]  *Id*. ¶¶ 39–45.
[15]  *Id*. ¶¶ 27–31, 46–52.
[16]  Doc. 7 (UPMC Lock Haven MTD); Doc. 8 (Dr. Sweetland MTD); Doc. 9 (Trooper Campana & State Police MTD); Doc. 10 (Brungard & Lycoming-Clinton MHID MTD).
[17]  Doc. 29 (Mem. Op.); Doc. 30 (Order Granting MTDs).

Dr. Sweetland, and the Pennsylvania State Police were dismissed with prejudice.[18] The Court granted the Estate leave to amend its counts against Brungard, Lycoming-Clinton MHID, and Trooper Campana.[19]

In the Memorandum Opinion accompanying the April 2022 Order, this Court explained that none of the three theories underlying the Estate's § 1983 cause of action against Brungard established a viable claim.[20] The first, centered on a violation of the Mental Health Procedures Act, failed because § 1983 "does not provide a cause of action for violations of state statutes."[21] The second and third—asserting constitutional violations and civil conspiracy, respectively—lacked the requisite support in the pleadings, as "the Estate's Complaint fail[ed] to allege facts showing that Brungard's decision to relay the message to the State Police amounted to more than a mistake."[22] And "[w]ithout an underlying constitutional violation against Brungard, the Estate [could not] sustain a claim against Lycoming-Clinton MHID for failing to train and supervise her."[23] The Court instructed that for Brungard and Lycoming-Clinton MHID "to be held liable, the Estate must allege facts showing that Brungard's incorrect report to the police was made intentionally or with reckless disregard for the truth."[24]

---

[18]  Doc. 30 (Order Granting MTDs) ¶¶ 3–4, 6.
[19]  *Id*. ¶¶ 1–2, 5.
[20]  Doc. 29 (Mem. Op.) at 7–9.
[21]  *Id*. at 8 (citing *Brown v. Grabowski*, 922 F.2d 1097, 1113 (3d Cir. 1990)).
[22]  *Id*.
[23]  *Id*. at 9.
[24]  *Id*.

**B.     Amended Complaint**

The Estate amended its Complaint in May 2022.[25] Relevant here, supporting

the claims against Brungard and Lycoming-Clinton MHID, the Amended

Complaint restates nearly all the allegations from the Original Complaint

verbatim.[26] Indeed, regarding the intent and motivation behind Brungard's

incorrect involuntary committal referral to the State Police, the Estate simply

supplements its original allegation that "rather than allow [Himmelwright] to

address the firearms situation, Defendant Brungard and/or other employees of

[Lycoming-Clinton MHID] did contact the Pennsylvania State Police,"[27] with the

following:

> Defendant Brungard and/or other employees are believed
> to have communicated that [Himmelwright] was
> involuntarily committed when that was not the case. This
> statement was an intentional [falsehood] or reckless
> disregard for the truth.[28]

The Amended Complaint contains no other additional factual allegations about

Brungard and likewise presents no new pleadings regarding Lycoming-Clinton

MHID.

---

[25]   Doc. 31 (Am. Compl.).
[26]   *Id.*
[27]   Doc. 1-3 (Compl.) ¶ 22.
[28]   Doc. 31 (Am. Compl.) ¶ 18.

Brungard and Lycoming-Clinton MHID moved to dismiss the Amended Complaint on May 26, 2022.[29] That motion has been fully briefed and is now ripe for disposition.[30]

## II.   LAW

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[31] and *Ashcroft v. Iqbal*,[32] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[33] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-

---

[29]   Doc. 32 (Brungard & Lycoming-Clinton MHID MTD Am. Compl.).
[30]   *See* Doc. 36 (Defs' Br.); Doc. 41 (Estate's Opp.); Doc. 42 (Brungard & Lycoming-Clinton MHID Reply).
[31]   550 U.S. 544 (2007).
[32]   556 U.S. 662 (2009).
[33]   *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[34]

## III.   ANALYSIS

### A.   Individual Liability: Brungard

In its Amended Complaint, the Estate again alleges that Brungard committed three distinct constitutional violations actionable under § 1983: Brungard (a) failed to advise Himmelwright of his rights under the Pennsylvania Mental Health Procedures Act; (b) incorrectly informed the Pennsylvania State Police that Himmelwright had been committed to a mental health facility, which resulted in a search for and seizure of Himmelwright's firearms and damage to his property; and (c) conspired to violate the Estate's "rights, privileges, and immunities."[35] The Defendants[36] move to dismiss the § 1983 claim against Brungard, arguing that she is immune from liability and, regardless, the Estate's three proffered theories for liability are either precluded by law or insufficiently pleaded.[37] The Court first addresses the immunity claims and then turns to the alleged constitutional violations at issue.

---

[34]   *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations, brackets, and citations omitted).

[35]   Doc. 31 (Am. Compl.) ¶ 24.

[36]   For the remainder of this Memorandum Opinion, the "Defendants" refers collectively to Brungard and Lycoming-Clinton MHID; it does not include the remaining Defendant, Trooper Campana.

[37]   *See* Doc. 36 (Defs' Br.) at 7–18.

### 1.   Immunity

According to the Defendants, Brungard is shielded from liability for two reasons: (a) she enjoys the protection of the Pennsylvania Political Subdivision Tort Claims Act,[38] and (b) as a county employee sued in her official capacity, she is entitled to qualified immunity.[39] Although the Defendants are wrong on the former, they are correct as to the latter.

The Tort Claims Act provides that, subject to certain limitations, local governmental agencies and their employees are immune from state law tort claims predicated on actions by agency employees.[40] That said, the Tort Claims Act "has no force" when applied to federal civil rights suits under § 1983.[41] Here, the Estate does not bring any state law tort claims against either Brungard or Lycoming-Clinton MHID; the sole claim against these Defendants alleges violations of § 1983.[42] As such, the Tort Claims Act does not apply in this case.

---

[38]   42 Pa. C.S.A. § 8541, *et seq.*

[39]   Doc. 36 (Defs' Br.) at 13–17.

[40]   *See* 42 Pa. C.S.A. § 8541 ("Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."); 42 Pa. C.S.A. § 8545 ("An employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter."); *see also Rittenhouse Entertainment, Inc. v. City of Wilkes-Barre*, 861 F. Supp. 2d 470, 489 (M.D. Pa. 2012) (Caputo, J.) (noting that the Tort Claims Act "makes local agencies immune from state law claims (with a few exceptions not applicable here)").

[41]   *Wade v. City of Pittsburgh*, 765 F.2d 405, 407 (3d Cir. 1985); *see also Mariano v. Borough of Dickson City*, 40 F. Supp. 3d 411, 420 (M.D. Pa. 2014) (Mannion, J.) ("[I]t is well established that immunity under the [Tort Claims Act] applies only to state law tort claims, and not federal civil rights suits under § 1983.").

[42]   *See* Doc. 31 (Am. Compl.).

Separately, federal and state officials are immune from lawsuits pertaining to official conduct unless a plaintiff pleads facts showing the official violated a statutory or constitutional right that was "clearly established" at the time of the challenged conduct.[43] The Supreme Court of the United States explains that a government official's conduct "violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[44] Such "clearly established rights are derived either from binding Supreme Court and Third Circuit precedent or from a robust consensus of cases of persuasive authority in the Courts of Appeals."[45] And "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."[46]

The official conduct at issue here is Brungard's incorrect statement to the State Police that Himmelwright had been committed to a mental health facility. Assessed on its own, this conduct does not raise constitutional concerns. The Estate has not identified, and this Court is not aware of, any legal authority from the Supreme Court, the Third Circuit, or other Courts of Appeals establishing that a

---

[43] *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

[44] *Id*. at 741 (internal quotation marks, brackets, and citation omitted).

[45] *Bland v. City of Newark*, 900 F.3d 77, 84 (3d Cir. 2018) (internal quotation marks and citation omitted).

[46] *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

mental health employee's erroneous referral—even if made with malintent—violates clearly established law.

Now, in its prior Memorandum Opinion, this Court acknowledged the general rule that "a government official's liability for causing an arrest is the same as for carrying it out,"[47] which the Third Circuit recognized in *Berg v. County of Allegheny*.[48] Relying on this citation, the Estate asserts that the clearly established right at issue here is the "right not to be unlawfully searched."[49] Put differently, the Estate argues that for purposes of assessing both immunity and liability, the Court should attribute to Brungard the State Police's subsequent decision to search for and seize Himmelwright's firearms.[50] But that argument fails for two reasons.

First, although articulated in broad terms, the rule as established does not obviously extend to the circumstances at issue here. As support for the proposition that "§ 1983 liability for an unlawful arrest can extend beyond the arresting officer to other officials whose intentional actions set the arresting officer in motion," the Third Circuit in *Berg* cites three cases: *Malley v. Briggs*,[51] *Kilbourn v. Thompson*,[52] and *Gordon v. Degelmann*.[53] But these cases involve factual circumstances inapposite to those at issue here. In its 1986 decision in *Malley*, the Supreme Court

---

[47]   Doc. 29 (Mem. Op.) at 8.
[48]   219 F.3d 261, 272 (3d Cir. 2000).
[49]   Doc. 41 (Estate's Opp.) at 8.
[50]   *Id.*
[51]   475 U.S. 335 (1986).
[52]   103 U.S. 168 (1880).
[53]   29 F.3d 295 (7th Cir. 1994).

addressed qualified immunity in the context of a police officer who obtained an arrest warrant without probable cause but did not make the actual arrest.[54] And in *Kilbourn*, a far older decision from 1880, the Supreme Court held that legislators in the United States House of Representatives who passed a resolution finding a defendant guilty of contempt and issued a warrant for his commitment to prison were as responsible as the arresting officer in a claim for false imprisonment.[55]

In *Gordon*, the United States Court of Appeals for the Seventh Circuit considered whether a state prosecutor may be liable for erroneously instructing police officers that "the law permitted them to arrest" a suspect.[56] The Seventh Circuit held that the district court erred in instructing the jury that an officer who simply relayed the prosecutor's conclusion that the law permitted an arrest could be held liable under § 1983 for a violation of the Fourth Amendment only if he arrested the plaintiff, explaining that the plaintiff could establish liability by showing that the officer who relayed the message "induced [the arresting officer] to arrest [the plaintiff]."[57] The Seventh Circuit noted that the plaintiff "would have had a difficult time" making this showing, as the officer who relayed the message "was not [the arresting officer's] supervisor and played little role except as the intermediary to the prosecutor"; but still, the Seventh Circuit concluded that

---

[54] 475 U.S. at 344 n.7.
[55] 103 U.S. at 200.
[56] 29 F.3d at 298.
[57] *Id.*

reversal was necessary as "the district court's instruction prevented the jury from asking the right question."[58]

Relying on this body of law, the Third Circuit in *Berg* considered whether three individuals could be held liable under § 1983 for an erroneously issued arrest warrant: (i) the probation supervisor who requested the arrest warrant; (ii) the warrant clerk who issued the warrant; and (iii) the elected constable who conducted the arrest.[59] In that case, the probation supervisor requested an arrest warrant for a probationer who violated conditions of his parole, but the warrant clerk committed an unintentional clerical error that resulted in an arrest warrant for a separate individual (i.e., the plaintiff).[60] Acting on that erroneous warrant, the constable arrested the plaintiff.[61] Relevant here, the Third Circuit held that the doctrine of qualified immunity did not shield the probation supervisor or warrant clerk from "intentional actions [that] set the arresting officer in motion."[62] That said, it affirmed summary judgment as to these two defendants, explaining that there is nothing in the record suggesting that the probation supervisor intended to cause the defendant's arrest and similarly nothing indicating that the warrant clerk was aware of her clerical error.[63]

---

[58] *Id*.
[59] 219 F.3d at 266–68.
[60] *Id*.
[61] *Id*.
[62] *Id*. at 272.
[63] *Id*. at 274–75.

Both *Berg* and the cases it relied on—*Malley*, *Kilbourn*, and *Gordon*—are factually distinct from the present circumstances. Here, the Estate alleges that Brungard "contact[ed] the Pennsylvania State Police" and "communicated that [Himmelwright] was involuntarily committed when that was not the case."[64] Unlike the defendants in *Berg* and *Kilbourn*, Brungard neither requested nor issued the warrant authorizing the seizure at issue. This is also not a case like *Malley* where the defendant in question obtained the warrant but did not participate in the seizure. Here, Brungard was not involved in either seeking or executing the warrant; Officer Campana "obtain[ed] a warrant" for Himmelwright's residence, searched the residence, and then "seize[d] [the] firearms" found inside.[65] And Brungard was not Officer Campana's supervisor. At most, she can be described as an "intermediary" between the Lycoming-Clinton MHID and the State Police, which the Seventh Circuit in *Gordon* suggested is insufficient to establish liability under § 1983.[66] Taken together, this legal authority does not dictate that a reasonable person in Brungard's shoes "would have understood" that incorrectly notifying the State Police that Himmelwright was involuntarily committed to a mental institution—even if done intentionally—violates a "clearly established" right.[67]

---

[64] Doc. 31 (Am. Compl.) ¶ 18.
[65] *Id*. ¶ 19.
[66] 29 F.3d at 298.
[67] *Ashcroft*, 563 U.S. at 741 (brackets and citation omitted).

Second, the legal authority emanating from *Berg* does not indicate that Brungard's erroneous referral (again, assuming it was intentional) violated a clearly established right. Neither the Supreme Court nor the Third Circuit itself has ever cited *Berg* for the proposition that "a government official's liability for causing an arrest is the same as for carrying it out,"[68] and as such, there is no binding precedent indicating that this rule extends beyond the circumstances in *Berg* and the cases cited therein. As the United States District Court for the Eastern District of Pennsylvania noted in *Greco v. National R.R. Passenger Corp.*, the "rule stated in *Berg* has primarily been applied to situations in which the defendant requested or issued an arrest warrant which was then used in an improvident arrest"[69]—that is, the factual scenarios present in *Berg* and the relevant prior authority.

To be fair, in *Tobey v. Jones*, the United States Court of Appeals for the Fourth Circuit applied this principle from *Berg* to find that airport security agents can be held liable for helping "effectuate" an arrest.[70] There, the plaintiff informed airport security agents that he intended to "peacefully protest" the airport's screening measures; the agents "radioed for assistance," and "[i]mmediately thereafter," police arrived and "seized and handcuffed" the plaintiff "from behind

---

[68]   219 F.3d at 272.
[69]   2005 WL 3591196, at *7 (E.D. Pa. Dec. 30, 2005) (citations omitted).
[70]   706 F.3d 379, 386 (4th Cir. 2013).

without further inquiry."[71] The Fourth Circuit concluded "[i]t is reasonable to infer that whatever [the airport security agents] told [the] police caused [the plaintiff's] arrest."[72]

But this ruling does not change the analysis here. Preliminarily, the factual circumstances differ. In *Tobey*, the Fourth Circuit declined to dismiss the claim because it felt that discovery may reveal "that [the airport security agents] indicated to [the] police that they should arrest [the plaintiff]," which the Fourth Circuit seemingly deemed sufficient to qualify as "causing" the arrest.[73] Here, the Estate alleges that Brungard told State Police that Himmelwright was involuntarily committed;[74] there is no allegation—and no basis for inference—that Brungard "indicated to [the State Police] that they should" search Himmelwright's residence and seize his firearms.[75]

Moreover, this single case does not constitute "a robust consensus of cases of persuasive authority in the Courts of Appeals" expanding the ruling in *Berg* to cover circumstances akin to those at issue here.[76] Indeed, the sole Third Circuit case addressing *Tobey* repudiated it:

> We disagree with the *Tobey* majority's conclusion that "[i]t is an undoubtedly natural consequence of reporting a person to the police that the person will be arrested."

---

[71]  *Id.*
[72]  *Id.*
[73]  *Id.*
[74]  Doc. 31 (Am. Compl.) ¶ 18.
[75]  *Tobey*, 706 F.3d at 386.
[76]  *Bland*, 900 F.3d at 84.

> That conclusion does not appear to have been based on
> anything in the record. Rather, it seems to arise from the
> majority's personal assumptions and inferences.
> However, absent something on the record to the contrary,
> it seems just as likely that police officers who are
> summoned by [airport security officials] would use their
> own independent discretion to determine whether there
> are sufficient grounds to take someone into custody.[77]

Accordingly, the Fourth Circuit's ruling in *Tobey* has no bearing on this Court's qualified immunity analysis.[78]

The Estate identifies no legal authority supporting its claim that Brungard's conduct—erroneously notifying the State Police that Himmelwright was involuntarily committed to a mental institution—violated a clearly established constitutional right. And this Court's review of the relevant case law suggests that the conduct did not. As such, even accepting the Estate's assertion that Brungard made this erroneous referral intentionally or with reckless disregard for the truth, the § 1983 claim against Brungard cannot proceed: Brungard is entitled to qualified immunity. This claim is therefore dismissed with prejudice.[79]

---

[77] *George v. Rehiel*, 738 F.3d 562, 583 (3d Cir. 2013).

[78] *See also Mocek v. City of Albuquerque*, 813 F.3d 912, 929 n.9 (10th Cir. 2015) (noting the disagreement between *Tobey* and *Bland* and concluding that "[a] circuit split will not satisfy the clearly established prong of qualified immunity").

[79] *See Wilson v. Altman*, 807 F. App'x 172, 177 (3d Cir. 2020) (affirming denial of leave to amend because the plaintiff "cannot offer any factual amendments that would cure the deficiencies in her complaint, where she has failed to allege the violation of any constitutional right and the Insurance Officials are shielded by qualified immunity"); *Tate v. Wiggins*, 805 F. App'x 159, 163–64 (3d Cir. 2020) ("Even assuming that Tate's condition constitutes a serious medical need, we agree that the defendants are entitled to qualified immunity because there is no established right involved here. . . . Finally, amendment of these claims would be futile."); *McCormick v. Kline*, 670 F. App'x 764, 766 (3d Cir. 2016) (holding that "it would be futile to allow leave to amend" when qualified immunity protects a corrections officer); *Gray v.*

## 2.    Alleged Constitutional Violations

Apart from questions of immunity, there are the substantive concerns. As discussed, the Estate asserts three predicates for its § 1983 claim against Brungard: (a) the Pennsylvania Mental Health Procedures Act; (b) the Fourth and Fourteenth Amendments' prohibitions on unreasonable searches and seizures; and (c) civil conspiracy. But the allegations in the Amended Complaint do not support the § 1983 claim on any of these three theories.

### a.    Mental Health Procedures Act

First, the Estate alleges that Brungard "unlawfully and maliciously" failed to advise Himmelwright of his rights under the Pennsylvania Mental Health Procedures Act.[80] But as explained in the April 2022 Memorandum Opinion, Section 1983 "does not provide a cause of action for violations of state statutes."[81] Accordingly, even if Brungard failed to follow the procedures outlined in the Mental Health Procedures Act, that is not a viable basis for asserting a § 1983 claim. To the extent the Estate's claim is predicated on alleged violations of this Pennsylvania state statute, it is dismissed with prejudice.[82]

---

*Pagano*, 287 F. App'x 155, 159 (3d Cir. 2008) (affirming denial of leave to amend because "the claim against Sheriff McGinn is . . . protected by qualified by immunity").

[80]   Doc. 31 (Am. Compl.) ¶ 24(a).

[81]   *Grabowski*, 922 F.2d at 1113.

[82]   *See Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (explaining that a district court need not permit a curative amendment if such amendment would be futile).

### b.    Unlawful Seizure

Second, the Estate asserts that Brungard violated Himmelwright's right to be free from unlawful searches and seizures when she incorrectly informed the Pennsylvania State Police that Himmelwright had been committed to a mental health facility, which resulted in a search of, and the subsequent seizure of firearms from, Himmelwright's residence.[83] It is well established that "[a]bsent immunity or an adequate defense, a person who, acting under color of state law, directly and intentionally applies the means by which another is seized in violation of the Fourth Amendment can be held liable under § 1983."[84] That said, when a defendant "does not intentionally cause the plaintiff to be seized, but is nonetheless responsible for the seizure, it may be that a due process 'deliberate indifference' rather than a Fourth Amendment analysis is appropriate."[85] And when a plaintiff "has not alleged anything more than mere negligence on [the government official's] part," the constitutional claim necessarily fails, as "[n]egligence by public officials is not actionable as a due process violation."[86]

As discussed, this Court dismissed the prior iteration of this claim included in the Estate's original Complaint because the Estate "fail[ed] to allege facts showing that Brungard's decision to relay the message to the State Police

---

[83]   Doc. 31 (Am. Compl.) ¶ 24(b).

[84]   *Berg*, 219 F.3d at 271–72.

[85]   *Id*. at 274 (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998)).

[86]   *Id*. (citing *Daniels v. Williams*, 474 U.S. 327 (1986); *Colburn v. Upper Darby Township*, 946 F.2d 1017 (3d Cir.1991)).

amounted to more than a mistake."[87] Put differently, the Estate's prior factual

allegations about Brungard established nothing more than negligence. The Court

thus dismissed this claim without prejudice, permitting the Estate to plead over.[88]

To that end, the Court instructed the Estate to "allege facts showing that

Brungard's incorrect report to the police was made intentionally or with reckless

disregard for the truth."[89]

The Estate has failed to do so. In the Amended Complaint, the Estate repeats

verbatim the allegation this Court relied on in concluding that the Complaint failed

to plead malintent or reckless disregard:

> Per the 302 paperwork, upon examination, Dr. Sweetland
> found that [Himmelwright] was "severely mentally
> disabled and in need of treatment. He should be admitted
> to a facility designated by the County Administrator for a
> period of treatment not to exceed 120 hours."[90]

This is again the sole factual allegation concerning what was relayed to Brungard

before she notified the State Police that Himmelwright had been involuntarily

committed. Responding to this Court's instructions, the Estate includes only the

following additional pleading: "Brungard and/or other employees are believed to

have communicated that [Himmelwright] was involuntarily committed when that

was not the case. This statement was an intentional [falsehood] or reckless

---

[87] Doc. 29 (Mem. Op.) at 8.
[88] *Id*.
[89] *Id*.
[90] Doc. 31 (Am. Compl.) ¶ 14.

disregard for the truth."[91] But this allegation simply restates the elements of a

§ 1983 official capacity suit.[92] Such "[f]ormulaic recitation[s] of the elements of a

cause of action will not do."[93]

As such, the Court again finds that the Estate has failed to state a § 1983

against Brungard based on purported violations of the Fourth and Fourteenth

Amendments. Because the Estate already received the opportunity to cure the

deficiencies with this claim, and it failed to do so, the Courts finds that further

amendment would be futile.[94] To the extent the Estate's claim is predicated on

these alleged constitutional violations, it is dismissed with prejudice.

### c.    Conspiracy

Finally, the Estate restates its claim that Brungard "conspir[ed] to violate the

rights, privileges, and immunities guaranteed to [the Estate] by the Constitution

and laws of the United States and the laws of the Commonwealth of

---

[91]  *Id.* ¶ 18.

[92]  *See* 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity.").

[93]  *McTernan v. City of York, PA*, 564 F.3d 636, 659 (3d Cir. 2009) (affirming district court's dismissal of, among other things, the "official capacity suit against Defendants Barth, Brenner, and Whitman" because the "complaint simply paraphrases § 1983") (citation omitted).

[94]  *See Simonton v. Ryland-Tanner*, 836 F. App'x 81, 84 (3d Cir. 2020) (holding that the district court "did not err by declining to give [the plaintiff] an opportunity to amend the complaint a second time to better support his claims" when the plaintiff failed to remedy the identified deficiencies in the first amended complaint).

Pennsylvania."[95] But as with the original Complaint, the Amended Complaint

contains no factual allegations supporting this basis for liability under § 1983.

To sustain a claim for conspiracy under § 1983, a plaintiff must adequately

allege the elements of a state law conspiracy claim.[96] In Pennsylvania, "[t]he

essential elements of a claim for civil conspiracy are as follows: (1) a combination

of two or more persons acting with a common purpose to do an unlawful act or to

do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act

done in pursuance of the common purpose; and (3) actual legal damage."[97] For the

first element, a complaint must include "allegations of a combination, agreement,

or understanding among all or between any of the defendants."[98] Further, this

agreement must be premised on or designed to achieve a deprivation of the alleged

victim's federal constitutional or statutory rights.[99] Absent allegations establishing

an agreement and "an actual violation of section 1983," the conspiracy claim "is

not actionable."[100]

---

[95]  Doc. 31 ¶ (Am. Compl.) 24(c).

[96]  *See Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir. 1974) (applying Pennsylvania civil conspiracy standard for § 1983 conspiracy claim); *see also Adams v. Teamsters Local 115*, 214 F. App'x 167, 172 (3d Cir. 2007) (holding that for § 1983 conspiracy claim, "a plaintiff must allege and prove the elements of civil conspiracy").

[97]  *Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. 2008) (citations omitted).

[98]  *Ammlung*, 494 F.2d at 814.

[99]  *See Rink v. Northeastern Educational Intermediate Unit 19*, 2016 WL 3912985, at *14 (M.D. Pa. July 18, 2016) (Mariani, J.) ("[T]o demonstrate a civil conspiracy pursuant to § 1983, [the plaintiff] must demonstrate that (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a federal constitutional or statutory right.") (internal quotation marks and citations omitted).

[100] *Id.*; *see also Ammlung*, 494 F.2d at 814 (finding that "[t]he complaint does not sound in conspiracy," as it contains "no allegations of a combination, agreement, or understanding

Here, the Estate again fails to allege the essential elements of a civil conspiracy claim. The Amended Complaint contains no factual allegations that Brungard and Officer Campagna plotted, planned, or conspired together to unlawfully seize Himmelwright's firearms. Indeed, based on the pleadings in the Amended Complaint, it's unclear whether Brungard and Officer Campagna even spoke before Officer Campagna obtained a warrant for Himmelwright's residence and seized Himmelwright's firearms. The Estate alleges that "Brungard and/or other employees of [Lycoming-Clinton MHID] did contact the Pennsylvania State Police" and "are believed to have communicated that [Himmelwright] was involuntarily committed when that was not the case."[101] These allegations do not establish who at Lycoming-Clinton MHID contacted the State Police or who at the State Police received the message. Further, as discussed, the Amended Complaint fails to state a § 1983 claim against Brungard based on her alleged referral to the State Police.

Lacking allegations of an agreement or an actual violation of § 1983 attributable to Brungard, the Amended Complaint does not sound in conspiracy. For this reason, and all those provided above, the § 1983 claim against Brungard is dismissed with prejudice.

---

among all or between any of the defendants" and "no factual allegations that the defendants plotted, planned, or conspired together to carry out the alleged chain of events").

[101]  Doc. 31 (Am. Compl.) ¶ 18.

## B.      Municipal Liability: Lycoming-Clinton MHID

Along with the § 1983 claim against Brungard, the Estate raises a *Monell* claim against Brungard's employer, Lycoming-Clinton MHID.[102] Specifically, the Estate argues that Lycoming-Clinton MHID is liable under § 1983 for Brungard's alleged constitutional violations because it "failed to ensure that [she] was properly supervised and trained."[103] But the claim against Lycoming-Clinton MHID fares no better than the claim against Brungard.

First, as this Court noted in its April 2022 Memorandum Opinion, a governmental unit can be held liable under § 1983 only if "under color of some official policy," it "'causes' an employee to violate another's constitutional rights."[104] Put differently, to establish municipal liability under § 1983, a plaintiff must first establish that an employee of the governmental unit in question violated the plaintiff's constitutional rights.[105] Here, the Estate has not done that. Accordingly, the Estate's claim against Lycoming-Clinton MHID necessarily fails: "[w]ithout an underlying constitutional violation against Brungard, the Estate cannot sustain a claim against Lycoming-Clinton MHID for failing to train and supervise her."[106]

---

[102] *See id.* ¶ 27.
[103] *Id.*
[104] *Monell v. Department of Social Services*, 436 U.S. 658, 692 (1978).
[105] *Id.*
[106] Doc. 29 (Mem. Op.) at 9 (citation omitted).

Second, even if the Estate had properly alleged that Brungard violated Himmelwright's constitutional rights, the claim against Lycoming-Clinton MHID cannot proceed because the Amended Complaint lacks factual allegations concerning the essential predicate for a § 1983 failure to train/supervise claim: deliberate indifference. To sustain § 1983 claims against a government unit based on its failure to train/supervise its employees, a plaintiff must allege facts showing that the government unit was "deliberately indifferent."[107] Deliberate indifference is generally established in one of two ways: (1) "[a] pattern of similar constitutional violations by untrained employees,"[108] or (2) "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."[109]

As the Defendants note, the Amended Complaint is devoid of any allegations relevant to the deliberate indifference analysis.[110] It contains no allegations about what training Lycoming-Clinton MHID failed to provide or the

---

[107] *See Christopher v. Nestlerode*, 240 F. App'x 481, 489 n.6 (3d Cir. 2007) ("Christopher contends Hose and the County were liable for failure to promulgate policies, failure to train, and failure to monitor or supervise. We apply the same 'deliberate indifference' standard to all three arguments."); *see also Estate of Roman v. City of Newark*, 914 F.3d 789, 799 n.7 (3d Cir. 2019) ("We consider allegations of failure to train, supervise, and discipline together because the fall under the same species of municipal liability."); *Bonenberger v. Plymouth Township*, 132 F.3d 20, 25 (3d Cir. 1997) ("Section 1983 would impose liability for La Penta's inadequate training and discipline only if the Plymouth Police Department was deliberately indifferent to the rights of persons with whom he came in contact.").

[108] *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

[109] *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989).

[110] *See* Doc. 36 (Defs' Br.) at 20.

ways in which the relevant training it offered was inadequate. There are likewise no allegations about prior constitutional violations by Brungard or other "untrained employees."[111] Indeed, aside from its general allegation that Lycoming-Clinton MHID "failed to ensure that Defendant Brungard was properly supervised or trained,"[112] the Estate makes no mention of the Department's training or supervision whatsoever.

Because the Estate has not alleged an underlying constitutional violation by Brungard or any facts demonstrating Lycoming-Clinton MHID's deliberate indifference, its *Monell* claim is dismissed.[113] As with the official capacity claim against Brungard, this dismissal is with prejudice.

## IV.  CONCLUSION

Eight months ago, this Court dismissed without prejudice the Estate's § 1983 claims against Brungard and Lycoming-Clinton MHID. Accordingly, the Estate was given the opportunity to revise its pleadings and remedy the identified deficiencies. Although the Estate amended its Complaint, it did not provide any additional factual allegations responsive to this Court's instructions; the Estate

---

[111] *Connick*, 563 U.S. at 62.

[112] Doc. 31 (Am. Compl.) ¶ 27.

[113] *See Wood v. Williams*, 568 F. App'x 100, 104 (3d Cir. 2014) ("The District Court dismissed Wood's *Monell* claim because her complaint failed to identify any unlawful policy or custom and failed to identify any policymaker or decisionmaker responsible for the unlawful conduct alleged. Instead, the complaint made conclusory and general claims of failure to screen, train, or supervise employees to avoid constitutional violations. The District Court was correct in finding that Wood's complaint allegations stated the elements of the cause of action and were insufficient.") (internal citations omitted).

26

restates verbatim the factual allegations in the original Complaint and then asserts, without support or substantiation, that Brungard's incorrect referral to the State Police was intentional or made with reckless disregard for the truth. That is inadequate.

Upon consideration, the Court finds that Brungard is shielded from liability because she is qualitatively immune, and that, regardless, the Estate has again failed to allege facts supporting any of its stated bases for liability under § 1983. Lacking facts establishing a constitutional violation attributable to Brungard, the Estate has not stated a viable *Monell* claim against Brungard's employer, Lycoming-Clinton MHID. Further, standing alone, the allegations regarding Lycoming-Clinton MHID do not demonstrate a failure in its training and supervision. For these reasons, the Estate's claims against Brungard and Lycoming-Clinton MHID are dismissed with prejudice.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge