IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ESTATE OF EDWARD L. HIMMELWRIGHT, | No. 4:21-CV-01731 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| BENJAMIN J. CAMPANA, | |
| Defendant. | |

**MEMORANDUM OPINION**

**NOVEMBER 14, 2023**

## I.   BACKGROUND

On May 20, 2022, the Estate of Edward L. Himmelwright filed an Amended Complaint asserting claims that arose out of Himmelwright's involuntary commitment under the Pennsylvania Mental Health Procedures Act ("MHPA") and the subsequent seizure of his firearms by Pennsylvania State Police ("PSP") Corporal Benjamin Campana.[1] Because the Court previously dismissed two of the defendants, only the claims against Campana remain.[2] Defendant's motion for summary judgment is currently before the Court. The motion is now ripe for disposition; for the reasons below, it is granted in part and denied in part.

---

[1]   *See* Doc. 31 (Amended Compl.).
[2]   *See* Doc. 49 (Order Granting Motion to Dismiss).

## II.   DISCUSSION

### A.   Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[4] A defendant "meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[5] Conversely, to survive summary judgment, a plaintiff must "point to admissible evidence that would be sufficient to show all elements of a prima facie case under applicable substantive law."[6]

In assessing "whether there is evidence upon which a jury can properly proceed to find a verdict for the [nonmoving] party,"[7] the Court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."[8] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the

---

[3] FED. R. CIV. P. 56(a).
[4] *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010).
[5] *Clark v. Mod. Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993).
[6] *Id.*
[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 448 (1871)).
[8] *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).

Court may "consider the fact undisputed for purposes of the motion."[9] Finally, although "the court need consider only the cited materials, . . . it may consider other materials in the record."[10]

### B. Undisputed Facts

Because Plaintiff "neglected to file 'a separate, short and concise statement of material facts[,]'" the Court is "entitled to deem [Campana's] statement of facts as admitted."[11] Therefore, the undisputed facts are as follows.[12]

Edward Himmelwright made a series of calls to the police threatening to commit a mass shooting at his wife's nursing home. On June 29, 2019, he left a voicemail warning the State College Police that he intended to "open up" with a gun at the nursing home.[13] Himmelwright next threatened to go on a "rampage" on July 9, 2019.[14] Finally, he called back on July 10, 2019 to indicate that he planned to go to the nursing home with his gun and that he would shoot the police if they came to his house.[15]

Under Section 302 of the MHPA, an individual can be involuntarily committed for a maximum of 120 hours if it is determined that they are severely

---

[9] FED. R. CIV. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613-14 (3d Cir. 2018).
[10] FED. R. CIV. P. 56(c)(3).
[11] *Smith v. Addy*, 343 F. App'x 806, 808 (3d Cir. 2009) (quoting L.R. 56.1). *See also Conn v. Bull*, 307 F. App'x 631, 633 (3d Cir. 2009).
[12] *See* Doc. 59 (Defendant's Statement of Material Facts).
[13] *Id.* ¶¶ 1-2.
[14] *Id.* ¶ 3.
[15] *Id.* ¶¶ 4, 6.

mentally disabled.[16] On July 10, 2019, the PSP obtained a Section 302 warrant to involuntarily commit Himmelwright.[17] While serving this Section 302 warrant, PSP officers observed firearms and ammunition in his home.[18] After the warrant was upheld, Himmelwright was involuntarily committed on July 10, 2019. Based on these events, Defendant then sought and received a search warrant for the guns on July 11, 2019.[19] Campana seized the firearms that same day, but the search warrant provided the PSP until 10:00 P.M. on July 12, 2019 to execute it.[20]

### C. Analysis

Defendant has requested summary judgment on two issues: that exigent circumstances justified the July 11, 2019 search and seizure and that sovereign immunity prevents the Estate from maintaining its trespass to chattels claim.

### 1. Exigent Circumstances

Although Campana had a warrant to enter the residence and seize the firearms, Pennsylvania law provided Himmelwright "a reasonable period of time, not to exceed 60 days" to "sell or transfer" his guns.[21] Because of this, Defendant contends that exigent circumstances authorized what, for purposes of this motion, is effectively a warrantless search and seizure.

---

[16] *See* 50 PA. STAT. § 7302 (2018).
[17] Doc. 59 (Defendant's Statement of Material Facts) ¶¶ 7-8.
[18] Doc. 59 (Defendant's Statement of Material Facts), Ex. A (Incident Report).
[19] Doc. 59 (Defendant's Statement of Material Facts) ¶ 9.
[20] *Id.* ¶ 11.
[21] 18 PA. CON. STAT. § 6105(a)(2)(i) (2023).

"The Fourth Amendment protects persons from 'unreasonable searches and seizures.'"[22] "Warrantless searches and seizures inside someone's home are presumptively unreasonable."[23] "One well-recognized exception [to this presumption] applies when 'the exigencies of the situation' make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable.'"[24] "Examples of exigent circumstances include, but are not limited to, hot pursuit of a suspected felon, the possibility that evidence may be removed or destroyed, and danger to the lives of officers or others."[25] The "common thread is imminence—'the existence of a true emergency.'"[26]

When conducting this analysis, courts often consider the six *Dorman* factors: (1) "the gravity of the crime that has been committed"; (2) "a reasonable belief that the suspect is armed"; (3) "a clear showing of probable cause based upon reasonably trustworthy information"; (4) "a strong belief that the suspect is in the premises"; (5) "a likelihood that the suspect will escape if not swiftly apprehended"; and (6)

---

[22] *Gurvey v. Twp. of Montclair, N.J.*, Civ. No. 19-17525, 2022 U.S. Dist. LEXIS 59815, at *14 (quoting U.S. CONST. AMEND. IV.).
[23] *Id.* (quoting *United States v. Coles*, 437 F.3d 361, 365-66 (3d Cir. 2006)).
[24] *Riley v. California*, 573 U.S. 373, 402 (2014) (quoting *Kentucky v. King*, 437 U.S. 373, 460 (2011)).
[25] *Coles*, 437 F.3d at 366 (citing *United States v. Richard*, 994 F.2d 244, 247-48 (5th Cir. 1993)).
[26] *United States v. Baker*, 563 F. Supp. 3d 361, 373 (M.D. Pa. 2021) (quoting *United States v. Mallory*, 765 F.3d 373, 384 (3d Cir. 2014)).

"peaceable entry, affording the suspect 'an opportunity to surrender without a struggle and thus to avoid the invasion of privacy involved in entry into the home.'"[27]

### a. The *Dorman* factors

The Court will use the *Dorman* factors, then, to begin its analysis. Although Himmelwright was never charged with a crime in connection with these events, the factors still provide a useful starting point.

The first and third *Dorman* factors support Campana's assertion that exigent circumstances existed.[28] The gravity of threatening mass violence is rather severe and it heightens the urgency of the situation facing the PSP. This urgency and Himmelwright's "own, admitted words" also support a finding of probable cause.[29] Actually receiving the July 11 search warrant bolsters this conclusion.

The second, fourth, fifth, and sixth factors favor the Plaintiff.[30] According to the undisputed facts, Himmelwright was involuntarily committed when his firearms were seized.[31] Defendant could not have reasonably believed that Himmelwright was

---

[27] *United States v. Anderson*, 644 F. App'x 192, 195 (3d Cir. 2016) (quoting *Dorman v. United States*, 435 F.2d 385, 392-393 (D.C. Cir. 1970)).

[28] The first factor is the "gravity of the crime[,]" and the third factor is whether a "clear showing of probable cause" has been made. *See Dorman*, 435 F.2d at 392-93.

[29] Doc. 64 (Defendant's Reply Brief in Support of Motion for Summary Judgment) at 3.

[30] The second factor requires a "reasonable belief that the suspect is armed"; the fourth factor requires a "strong belief that the suspect is in the premises"; the fifth factor requires "a likelihood that the suspect will escape" if not apprehended; and the sixth factor addresses if the police peacefully entered the premises to provide the suspect with a chance to surrender. *See Dorman*, 435 F.2d at 392-93.

[31] *See* Doc. 59 (Defendant's Statement of Material Facts), Ex. A (Incident Report).

armed on the premises, posed a risk of escape, or was likely to put up a struggle under these circumstances.

This *Dorman* analysis provides mixed results. Himmelwright threatened to unleash mass violence and possessed the weapons to do so, but he was involuntarily committed when the search occurred. Further, the PSP waited until July 11 to request a search warrant and were given until 10:00 P.M. on July 12 to execute it.[32] These facts certainly raise doubts as to the urgency of the situation. For this reason, the Court will turn to other instances of warrantless searches and seizures for further guidance.

          b.    **Similar Circumstances**

Two opposing lines of reasoning emerge when looking at warrantless searches and seizures under similar circumstances. Under the first series of cases, securing the suspect terminated any exigency that may have existed.[33] The second line of cases suggests that exigent circumstances remain when there is the potential for an individual to harm themselves or others upon their release from custody.[34] Both of these rationales are applicable to the present case.

---

32   *See id.*
33   *See e.g., Mallory*, 765 F.3d at 384-85 (concluding that exigent circumstances did not exist to justify an additional search for a firearm when police had secured both the defendant and the premises) *and Coppola v. Town of Plattekill*, 1:17-CV-1032, 2018 U.S. Dist. LEXIS 46805, at *25-26 (N.D.N.Y. Mar. 22, 2018) (noting that "there was no imminent threat of [the individual] using the gun when the officers entered her house" that justified the warrantless intrusion because "she was handcuffed in a patrol car.").
34   *See e.g., Mora v. City of Gaithersburg*, 519 F.3d 216 (4th Cir. 2008) (upholding a warrantless search and seizure of firearms when police had received a credible hotline tip that the suspect

Given these diverging paths, it is beneficial to turn to the relevant provisions of the MHPA. "[S]everely mentally disabled" individuals can be involuntarily committed for a maximum of 120 hours under Section 302.[35] The Act defines "severely mentally disabled" to include those that pose a "clear and present danger" of harming themselves or others.[36] "Clear and present danger" can be shown by establishing that in the last thirty days "the person has inflicted or attempted to inflict serious bodily harm on another" and that it is reasonably probable "that such conduct will be repeated."[37] Despite authorizing involuntary commitments for individuals that pose a threat of harm to others, the state legislature specifically provided "a reasonable period of time, not to exceed 60 days" for these individuals to relinquish their firearms.[38]

### c. Questions Remain as to Whether Exigent Circumstances Existed at the Time of Entry

Questions exist as to whether exigent circumstances authorized this search and seizure. The *Dorman* analysis did not lead to a firm conclusion, and there are two equally applicable lines of reasoning present in the caselaw. Further, allowing a warrantless intrusion under this exception may undermine the legislative scheme

---

intended to commit a mass shooting) *and Sutterfield v. City of Milwaukee*, 751 F.3d 542 (7th Cir. 2014) (discussing the need to remove a suicidal woman's access to a gun despite her detainment for a mental health evaluation).
[35] 50 PA. STAT. § 7302 (2018).
[36] 50 PA. STAT. § 7301 (2018).
[37] *Id.*
[38] 18 PA. CON. STAT. § 6105(a)(2)(i) (2023).

established in the MHPA. Therefore, the Court concludes that sufficient questions remain such that the motion for summary judgment on this question must be denied.

### 2. Sovereign Immunity

Defendant also requested that the Court grant summary judgment on whether state sovereign immunity bars the trespass to chattels claim. Plaintiff does "not appear to contest this argument, given that [he] devote[s] the entire 'argument' section of [his] briefing to" asserting that exigent circumstances did not exist.[39] "A party that fails to address an argument in its brief in opposition to a motion for summary judgment waives that argument."[40] "Even if" the Estate had "properly opposed" this part of the motion, the Court concludes that Defendant "has met his burden to demonstrate that he is entitled to judgment as a matter of law" for the reasons below.[41]

"Under Pennsylvania law, 'Commonwealth employees, such as state troopers, enjoy immunity from most state law claims.'"[42] "This immunity 'shields Commonwealth employees from liability when their actions: (1) cannot fit into one of the [ten] statutory sovereign immunity exceptions; (2) are not negligent; and (3)

---

[39] *Grossman v. Morningstar*, 2:20-CV-01801, 2022 U.S. Dist. LEXIS 130120, at *31 (W.D. Pa. July 22, 2022). *See* Doc. 63 (Brief in Opposition to Motion for Summary Judgment).
[40] *Id.* (citing *Aetna Health Inc. v. Davilla*, 542 U.S. 200, 212 n.2 (2004); *Travitz v. Northeast Dep't ILGWU Health & Welfare Fund*, 13 F.3d 704, 711 (3d Cir. 1994) *and Fischer v. G4S Secure Sols USA, Inc.*, Civ. A. No. 10-6792, 2014 U.S. Dist. LEXIS 86139, at *46 (D.N.J. June 25, 2014)).
[41] *Id.*
[42] *Id.* (quoting *Kintzel v. Kleeman*, 965 F. Supp. 2d 601, 606 (M.D. Pa. 2013)).

occur within the scope of their employment.'"[43] None of these statutory sovereign immunity exceptions apply, and the state law claim is an intentional tort.[44] As long as Defendant acted within the scope of his employment, he will be granted immunity from this claim. Although "the scope of employment question is 'ordinarily a question of fact for the jury,' the court may decide this question as a matter of law when 'neither the facts nor the inferences to be drawn from them are in dispute.'"[45]

To determine if an employee acted within the scope of their employment, the Pennsylvania Supreme Court has adopted the approach of the Restatement (Second) of Agency ("the Restatement").[46] "According to the Restatement, 'conduct is within the scope of employment if, but only if: (a) it is the kind [the employee] is employed to perform; (b) it occurs substantially within the authorized time and space limits [and] (c) it is actuated, at least in part, by a purpose to serve the master.'"[47] "For conduct 'to be within the scope of employment, [it] must be of the same general nature as that authorized, or incidental to that authorized.'"[48] "'Intentional torts that

---

[43] *Id.*

[44] The ten exceptions are: (1) vehicle liability; (2) medical/professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; (9) toxoids and vaccines; and (10) sexual abuse. *See* 42 PA. CON. STAT. § 8522(b) (2023).

[45] *Franklin v. McGowen*, 1:17-CV-1593, 2019 U.S. Dist. LEXIS 153149, at *23 (M.D. Pa. Sept. 6, 2019) (quoting *Justice v. Lombardo*, 208 A.3d 1057, 1068 (Pa. 2019)).

[46] *See Justice*, 208 A.3d at 1066-67.

[47] *Korman v. Pa. State Police Honesdale Barracks*, 3:21-CV-01516, 2023 U.S. Dist. LEXIS 31484, at *40-41 (M.D. Pa. Feb. 24, 2023) (quoting *Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir. 2000)).

[48] *Id.* (quoting *Justice*, 208 A.3d at 1067).

are unprovoked, unnecessary, or unjustified by security concerns or penological goals do not, as a matter of law, fall within the scope of employment.'"[49]

Based on the undisputed facts, Campana acted within the scope of his employment. Effectuating a search warrant is exactly the kind of conduct officers are "employed to perform."[50] Campana also took the relevant actions in his capacity as a PSP officer. Neither the Complaint nor the facts suggest an alternative, improper motive to seize the firearms.[51] The undisputed facts demonstrate that Defendant acted in response to what he and the PSP perceived as a security concern.[52]

Even though there are now issues as to the validity of the warrant, that alone does not mean Campana acted outside the scope of his employment.[53] "Under Pennsylvania law, even unauthorized acts may be within the scope of employment 'if they are clearly incidental to the master's business.'"[54] Only a plausible "allegation that the defendant officer knowingly or purposefully" acted without probable cause would shift this conduct to outside the scope of his employment.[55]

---

[49] *Id.* (quoting *Minyard v. City of Philadelphia*, No. Civ. A. 11-246, 2012 U.S. Dist. LEXIS 106432, at *6 (E.D. Pa. July 31, 2012)).
[50] *Id.* (quoting *Brumfield*, 232 F.3d at 380).
[51] *See* Doc. 31 (Amended Compl.) and Doc. 59 (Defendant's Statement of Material Facts).
[52] *See Korman*, 2023 U.S. Dist. LEXIS 31484, at *40-41 (quoting *Minyard*, 2012 U.S. Dist. LEXIS 106432, at *6).
[53] *See e.g.*, *Fierman v. Doherty*, 1:15-CV-1427, 2019 U.S. Dist. LEXIS 119936 (M.D. Pa. July 17, 2019) (finding that the defendants acted within the scope of their employment when the plaintiff alleged that he was prosecuted and arrested without probable cause).
[54] *Cruz v. City of Pottsville*, 3:21-CV-00283, 2022 U.S. Dist. LEXIS 90116, at *31 (M.D. Pa. May 19, 2022) (quoting *Brumfield*, 232 F.3d at 381).
[55] *Spiker v. Allegheny Cnty. Bd. of Prob. & Parole*, 920 F. Supp. 2d 580, 611-12 (W.D. Pa. Jan. 30, 2013) (citing *Perkins v. Staskiewicz*, No. 08-1651, 2009 U.S. Dist. LEXIS 20771, at *4 (M.D. Pa. Mar. 13, 2009)).

Here, the Complaint only alleges that Campana entered Himmelwright's "residence without good legal cause to do so."[56] Nothing indicates that he purposefully or knowingly executed the warrant without probable cause. Consequently, Defendant is entitled to judgment as a matter of law because he acted within the scope of his employment, and sovereign immunity therefore bars this state law claim.

## III.   CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is granted in part and denied in part.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[56] Doc. 31 (Amended Compl.) ¶ 21.